### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

HARVEY BLONDER          *
    **Plaintiff**

                        *    **CIVIL NO. SKG-04-3732**

    **V.**

                        *

**STEVEN B. BUCKHANTZ, et al.,**
    **Defendants**         *

*   *   *   *   *   *   *   *   *   *   *   *   *


### MEMORANDUM OPINION

The case involves a dispute under Maryland state law whereby the plaintiff Blonder ("plaintiff") alleges that he was damaged as a result of defendant Mahieu's ("defendant") fraudulent misrepresentations.[1]  (Paper No. 15).  Presently pending before the Court is defendant's motion for summary judgment (Paper No. 35), and plaintiff's motion for leave to file an amended complaint.  (Paper No. 40).  A telephone hearing was held on February 7, 2006.  For the reasons discussed herein, defendant's motion for summary judgment is DENIED and plaintiff's motion for leave to file an amended complaint is DENIED.

II.  <u>Factual Background</u>

The following facts are undisputed.  On May 19, 2001, Steven Buckhantz ("Buckhantz") agreed to sell his property, located at 14301 Wight Street in Ocean City, Maryland, ("Wight Street

---

[1] In his complaint, plaintiff also filed suit against Steven Buckhantz.  On July 31, 2005, plaintiff voluntarily dismissed all claims against Buckhantz. (Paper No. 31).

Property") to George Wilson ("Wilson").  Buckhantz was represented in the matter by the law firm of Adams, Porter & Radigan, Ltd.  Partner William T. Freyvogel, Esq. ("Freyvogel") was primarily in charge of the matter.  (Paper No. 38, Exh. 2 at 2-3).  Defendant Mahieu was a junior associate at Adams, Porter & Radigan, Ltd.  He did not represent Buckhantz in connection with the Wilson contract until May or June 2002, although he has worked for Buckhantz on other matters.  (Id.)

In June 2001, a contract dispute arose between Wilson and Buckhantz.  On July 9, 2001, Wilson's counsel sent a letter to Buckhantz and Freyvogel, informing them that Buckhantz was in breach and that Wilson was prepared to enforce his rights under the contract.  (Paper No. 36, Exh. 4 at 2).  Freyvogel does not recall receiving the letter, and was unable to locate a copy within the firm's files.  (Paper No. 36 Exh. 5 at 1).  Defendant said that he never saw the July 9, 2001 letter.  (Paper No. 36, Exh. 3 at 9).

Defendant said that he was aware that the Wilson contract did not close, but did not know that Wilson was planning to file suit to enforce his rights under the contract.  (Id. at 11-2). To his knowledge, Wilson abandoned his claim to the property by pursuing an option that was not permitted under the contract. (Paper No. 36, Exh. 17 at 2).  Defendant never spoke with Wilson or his attorney about their intentions.  (Paper No. 36, Exh. 3 at

9).  His knowledge of the dispute came "more by way [of]
anecdote, if anything, with Mr. Freyvogel telling people, you
know, at a weekly lunch meeting of all the attorneys or in a
meeting that were having related to other Buckhantz work
generally about what happened."  (<u>Id.</u> at 11).

Sometime in early 2002, Buckhantz relisted the Wight Street
Property.  In March 2002, plaintiff contacted Harry Campanaris, a
real estate agent at O'Conor, Piper and Flynn, about the
property. (Paper No. 36, Exh. 7 at 18).  Plaintiff has been
working in real estate since 1975.  (<u>Id.</u> at 65).  In the past, he
has negotiated land sale contracts without the involvement of
counsel.  (<u>Id.</u> at 7-15).  Because the property was a good deal,
the plaintiff asked Campanaris to contact Sharyn O'Hare, the
listing agent, to inquire if the house had previously been
purchased, and, if so, why the sale did not go through.  (<u>Id.</u> at
25).  O'Hare telephoned the plaintiff, and told him that: "the
house was for sale.  There were no problems. The house could be
purchased.  There were no contracts, no existing, no nothing."
(<u>Id.</u> at 26).  O'Hare told plaintiff to contact the Firm of
Freyvogel to find out additional information.  (<u>Id.</u>)

On March 31, 2002, plaintiff entered into a contract with
Buckhantz to buy the Wight Street Property for $685,000.  (Paper
No. 36, Exh. 17 at 2).  Before the plaintiff's contract closed,
Wilson sued Buckhantz for specific performance of the land sale

contract in Circuit Court of Worcester County, Maryland on May 1, 2002.  On or about June 2002, pursuant to a settlement agreement, Buckhantz promised to sell the Wight Street Property to Wilson, regardless of the Blonder contract.

Following the settlement, plaintiff gave Wilson $100,000 to gain an interest in OC Beach Investments, LLC, which owns the Wight Street Property.  (Paper No. 36, Exh. 7 at 109).  As a result, plaintiff shares the property with Wilson and is responsible for paying half of the mortgage and any other debts stemming from the use of the property.  (Id. at 111-2).

Prior to entering into the sales contract, plaintiff had the opportunity to buy another property located next door to the Wight Street Property for approximately $785,000.  (Id. at 95).  Plaintiff testified that he probably would have purchased the property (Id. at 53), or another property in Ocean City if he had not been reassured by defendant.  (Paper No. 38, Exh. A at 2).

A genuine dispute exists about the following material facts.  Prior to entering into the contract with Buckhantz, plaintiff stated that he called the defendant about the Wight Street Property as a result of his conversation with the listing agent.  Plaintiff said that it was important for him to verify with both the real estate agent and the law firm that the contract would close.  During the conversation, plaintiff alleges that defendant represented he was Mr. Buckhantz's attorney.  (Paper No. 38, Exh.

4

A at 1).  Plaintiff recalled being "given the go ahead signal in
my brain to go ahead and enter into that contract, that there was
no problems, that there was no pending contracts, there was no
litigation, that everything was okay." (Paper 36, Exh. 7 at 46).
In addition, plaintiff recollected the defendant told him that,
"there were no claims against the property.  The prior contract
purchaser of the Property had defaulted under his contract.  The
prior purchaser was no longer attempting to acquire the property.
The prior purchaser informed him that they were no longer
interested in the property.  Buckhantz had the full right, power
and authority to sell the property." (Paper No. 41, Exh. 18 at
34; Paper No. 38, Exh. A at 1).   At his deposition, plaintiff
could not quote (Paper No. 41, Exh. 18 at 34) or otherwise recall
the actual words used by the defendant.  (Paper No. 36, Exh. 7 at
61).  Yet, there was no ifs, ands or buts in his mind that there
were no problems and he could enter into the contract.  (Paper
No. 41, Exh. 18 at 35).

     In comparison, defendant stated that he does not recall
having the conversation with plaintiff.  (Paper No. 36, Exh. 17
at 2).  To the best of his knowledge, he does not recall having
any conversation or communications with the plaintiff or his
representatives until June 2002.  (Paper No. 36, Exh. 3 at 18).
In addition, defendant's billing records do not reflect any
conversations between the plaintiff and defendant in March 2002.

(Paper No. 36, Exh. 5 at 6-11).

II.  <u>Procedural History</u>

On October 21, 2004, plaintiff filed a complaint in the Circuit Court of Worchester County, Maryland.  (Paper No. 2). The case was removed to federal court on November 24, 2004. (Paper No. 1).  On January 3, 2005, defendant Mahieu filed a motion to dismiss, or in the alternative, summary judgment, arguing that, among other things, plaintiff failed to state a claim for which relief can be granted under Maryland law.  (Paper No. 11 at 11).  Two weeks later, plaintiff filed an amended complaint which addressed the deficiencies.  (Paper No. 15).  On February 24, 2005, defendant renewed its motion to dismiss, or in the alternative, motion for summary judgment.  (Paper No. 17). After the motion was fully briefed, Judge Motz denied defendant's motion to dismiss as moot, because the deficiencies in the complaint had been remedied.  (Paper No. 21).

Judge Motz referred the case to the undersigned for all proceedings and the entry of judgment on June 24, 2005.  (Paper No. 27).  Discovery closed on October 17, 2005.  (Paper No. 25).

On November 16, 2005, defendant filed his motion for summary judgment.  On December 9, 2005, plaintiff responded to the motion and filed a motion seeking leave to amend the complaint.  (Paper No. 37 - 39).  Briefing is now complete.

IV.  <u>Motion for Summary Judgment</u>

6

A.  Standard of Review

Summary judgment is appropriate if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law.  FED. R. CIV. P.
56(c).  Thus, summary judgment is appropriate when it is clear
that no genuine issue of material fact remains unresolved and an
inquiry into the facts is unnecessary to clarify the application
of the law.  Haavistola v. Community Fire Co. of Rising Sun, 6
F.3d 211, 214 (4th Cir. 1993).

The moving party has the burden of initially showing the
absence of a genuine issue concerning any material fact.  Adickes
v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142
(1970).  Then the burden shifts to the nonmoving party to "make a
showing sufficient to establish the existence of an element
essential to that party's case and on which that party will bear
the burden of proof at trial."  Celotex Corp. v. Catrett, 477
U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  When a
nonmoving party fails to make such showing, summary judgment is
appropriate because the nonmoving party would be unable to
establish an element of her claim at trial.  Id.

To survive summary judgment, the nonmoving party must
produce "specific facts showing that there is a genuine issue for

7

trial," and may not rest upon the "bald assertions of his

pleadings." FED. R. CIV. P. 56(e).  Summary judgment is

inappropriate if a reasonable jury could find for the nonmoving

party at trial.  Anderson v. Liberty Lobby, 477 U.S. 242, 249,

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> In ruling on a motion for summary judgment, the judge
> must view the evidence presented through the prism of
> the substantive evidentiary burden.... The question
> here is whether a jury could reasonably find either
> that the plaintiff proved his case by the quality and
> quantity of evidence required by the governing law or
> that he did not.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  Accord

Wells v. Liddy, Inc., 186 F.3d 505, 520 (4th Cir. 1999); 10A

Wright & Miller, Federal Practice and Procedure, § 2727 (2005)

("[I]n order to assess whether sufficient evidence is presented

to require the case to go to trial for its resolution, the court

must taken into account the substantive evidentiary burden that

will be applicable at trial."); 11 Bender, Moore's Federal

Practice 3d § 56.13[3](2005) (Nonmovant's burden of production

will be evaluated in light of burden of persuasion that nonmovant

will be held to at trial.)

    At the summary judgment stage, the court must view the

evidence and inferences to be drawn from that evidence "in the

light most favorable to the non-moving party."  The non-moving

party is to "have the credibility of his evidence as forecast

assumed, [and] all internal conflicts in it resolved favorably to

him." Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990)

(quoting Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th

Cir. 1979)).

    B.  Discussion[2]

    Under Maryland law, in order to recover damages in an action

for fraud, a plaintiff must prove by clear and convincing

evidence (1) that the defendant made a false representation to

the plaintiff, (2) that its falsity was either known to the

defendant or that the representation was made with reckless

indifference as to its truth, (3) that the misrepresentation was

made for the purpose of defrauding the plaintiff, (4) that the

plaintiff relied on the misrepresentation and had the right to

rely on it, and (5) that the plaintiff suffered compensable

injury resulting from the misrepresentation.  Hoffman v. Stamper,

385 Md. 1, 28, 867 A.2d 276, 292 (2005).

    For the purposes of summary judgment, both parties agree

that the Court must consider whether a jury could reasonably find

the plaintiff established each element of fraud by the quality

and quantity of evidence by clear and convincing evidence.

---

    [2] As a preliminary issue, plaintiff argues that the Court is
precluded from granting the motion because Judge Motz previously
denied defendant's motion to dismiss.  (Paper No. 38-1 at 2).  The
recording of the telephonic hearing reveals that Judge Motz ruled
solely on the motion to dismiss without limiting the defendant's
ability to bring a motion for summary judgment at the appropriate
time.  As a result, defendant was not barred from bringing a motion
for summary judgment after discovery concluded.  In any event,
successive motions are not per se prohibited.

McKenzie v. Comcast Cable Communications, Inc., 393 F.Supp.2d 362, 375 (D. Md. 2005) (quoting Edell & Assocs. P.C. v. Law Offices of Peter Angelos, 264 F.3d 424, (4th Cir. 2001) (Wiedner, J., concurring in part and dissenting in part) ("[W]here, as in a fraud claim, the nonmoving party must produce clear and convincing evidence to support his claim, that higher evidentiary burden is considered part of the 'summary judgment calculus.'")); Accord Dacars Motors of Silver Spring, Inc. v. Borzym, 379 Md. 249, 271, 841 A.2d 828, 840-1 (2004).

"To be clear and convincing evidence, evidence should be 'clear' in the sense that it is certain, plain to the understanding, and unambiguous and 'convincing' in the sense that it is so reasonable and persuasive as to cause you to believe it. But you need not be convinced beyond a reasonable doubt." MPJI 1.8(b) (2005).

> The requirement of 'clear and convincing' or 'satisfactory' evidence does not call for 'unanswerable' or 'conclusive' evidence... It has also been said that the term 'clear and convincing' evidence means that the witnesses to a fact must be found to be credible, and that the facts to which they have testified are distinctly remembered and the details thereof narrated exactly and in due order, so as to enable the trier of the facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. Whether evidence is clear and convincing requires weighing, comparing, testing, and judging its worth when considered in connection with all the facts and circumstances in evidence.

Berkey v. Delia, 287 Md. 302, 413 A.2d 170 (1980).

As described below, the defendant is not entitled to summary

judgment at this time.

       1.   <u>A Reasonable Jury Could Find that Defendant Made</u>
          <u>a False Statement.</u>

The first element in a fraudulent misrepresentation claim is whether the defendant made a false representation to the plaintiff.  <u>Ellerin v. Fairfax Sav., F.S.B.</u>, 337 Md. 216, 229, 652 A.2d 1117, 1123 (1995).  Because defendant denies speaking with the plaintiff until after the contract was signed (Paper No. 36, Exh. 17 at 2), a clear dispute of material fact exists over whether the conversation did in fact occur.[3]

However, defendant argues that because the plaintiff testified at his deposition that he does not recall the actual words used, plaintiff failed to establish by clear and convincing evidence that the allegedly fraudulent statements were made.  In response, plaintiff submitted an affidavit setting forth his recollection of the conversation.  (Paper No. 38, Exh. A at 2).[4]

------

[3] Defendant argues that the plaintiff cannot prove that he heard the alleged statements from the defendant, as opposed to another involved party.  (Paper No. 35 at 15).  Plaintiff testified that he spoke with the defendant.  At summary judgment, it is inappropriate for the Court to resolve credibility questions about the plaintiff's testimony.  Viewing the testimony in the light most favorable to the plaintiff, a reasonable juror could conclude that he spoke with the defendant and that defendant said what plaintiff claimed.

[4] In his affidavit, plaintiff certified under penalty of perjury that to his personal knowledge, "Mr Mahieu informed me that there were no claims against the property, that the prior contract purchaser of the Property had defaulted under the contract, that the prior purchaser was no longer attempting to acquire the Property, that the prior purchaser informed him that they were no longer interest[ed] in the Property, and that Mr. Buckhantz had the full right, power and authority to sell the Property to Blonder."  (Paper No. 38, Exh. A at

If believed, plaintiff's affidavit statement is sufficient evidence for a jury to find by clear and convincing evidence that the misrepresentation occurred.  Defendant argues that the Court should not rely on the affidavit, as it is inconsistent with the plaintiff's previous deposition testimony.  (Paper No. 41-1 at 3).[5]

Summary judgment is the inappropriate time to resolve factual disputes about a witness's credibility.  Cram v. Sun Ins. Office, Ltd., 375 F.2d 670, 674 (4th Cir. 1967); Nilson v. Historic Inns Group Ltd., 903 F.Supp. 905, 909 (D. Md. 1995).  Yet, a "party cannot create a triable issue in opposition to summary judgment simply by contradicting his deposition testimony with a subsequent affidavit."  Hernandez v. Trawler Miss Vertie Mae, Inc., 187 F.3d 432, 438 (4th Cir. 1999).  If the affidavit directly contradicts the witness's previous sworn testimony, the affidavit will be disregarded for the purpose of summary judgment.  Rohrbough v. Wyeth Laboratories, Inc., 916 F.2d 970, 975 (4th Cir. 1990) (diversity case); Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984).  However, when the deposition

---

1).

[5] Defendant also asserts that plaintiff is asking the Court to rely on his amended complaint.  Clearly the amended complaint, filed by counsel, is not evidence which would be admissible at trial. FED. R. CIV. P. 56(E). In ruling on the pending motion, the Court has not considered the amended complaint. However, the plaintiff's deposition statements to the same effect are admissible, if they are based on the plaintiff's knowledge and belief.

testimony is not clear and is not shown to conflict with the affidavit in any material respect, both the affidavit and the testimony will be considered.  Elries v. Denny's Inc., 179 F.Supp.2d 590, 596 (D. Md. 2002).

The plaintiff's affidavit does not directly contradict his deposition testimony.  His deposition testimony shows he has some recollection of the conversation in question,[6] even if plaintiff was not able to recall the precise language used.[7]  While there may be some inconsistences between the two submissions, the

---

[6]At his deposition, when the plaintiff was asked what assurances Mahieu provided the plaintiff, he testified
> I think it's in the pleadings, of which you have given me. I'll be happy to read it and put it in the deposition. There were no claims against the property. And the prior contract purchaser of the property had defaulted under his contract. And that the prior purchaser was no longer attempting to acquire the property. That the prior purchaser informed they were no longer interested in the property. And that Buckhantz had the full right, power and authority to sell the property.

(Paper No. 41, Exh. 18 at 33-4).  The plaintiff was then asked whether the statements was a direct quote.  He responded, "I don't know if they are 100 percent direct. Pretty much on point." (Id.) Q: Can you remember some of the language that was used.  I'm asking you to quote, if you can? A: I cannot it.  (Id. at 34).

Later, he was asked if he recalled the specifics of the conversation.  The plaintiff stated," Other than I was given the go ahead signal in my brain to go ahead and enter into that contract, that there was no problems, that there was no pending contracts, there was no litigation, that everything was okay.  If you entered into a contract, basically from start to finish, you would close on the contract." (Paper 36, Exh. 7 at 46).

[7] Q: after the phone call, you said — I don't want to misquote you ever you say you felt confident that the house was available to buy? A: Yes.  Q: You felt that as a result of the phone call, that the house had no pending contract on it? A: That's what I was assured.  Q: You can't remember specifically how that was conveyed to you? A: Conveyed over the telephone.  Q: Can you recall the words that were used to convey that? A: Absolutely not.  (Paper No. 36, Exh. 7 at 61).

differences are not material and would be considered by the jury in its assessment of the plaintiff's credibility.  Thus, when viewed in the light most favorable to the non-moving party, a reasonable jury could find clear and convincing evidence that the defendant made the alleged misrepresentations to the plaintiff.

> 2.   <u>A Reasonable Jury Could Conclude the Defendant Acted With Reckless Indifference to the Truth.</u>

The plaintiff must establish the defendant either made a false statement or acted with reckless indifference to the truth or falsity of the statement.  <u>Ellerin v. Fairfax Sav, F.S.B.</u>, 337 Md. 216, 232-5, 652 A.2d 1117, 1125 (1995).  No evidence has been presented to show defendant had actual knowledge of Wilson's intentions.[8]  At issue is whether a genuine issue of material fact exists as to whether the statements were made with reckless indifference.

> Reckless indifference to the truth or falsity of a statement arises when the defendant makes the representation even though he is aware that he does not know whether it is true or false - where he knows that he lacks knowledge as to its truth or falsity - and nonetheless makes the representation without regard to his lack of knowledge.

<u>Hoffman v. Stamper</u>, 385 Md. 1, 42, 867 A.2d 276, 300 (2005).  <u>See</u>

---

[8]  Defendant argues that his statements were legal opinions which cannot be as a matter of law, fraudulent statements.  While the defendant's alleged statement that Mr. Wilson defaulted on the contract is clearly a matter of law which is not fraudulent,  <u>Boyd v. Hickman</u>, 114 Md.App. 108, 689 A.2d 106 (1997) (statement by state's attorney that he could seize the car was correct as a matter of law.), at the very least, defendant's alleged statement that Mr. Wilson told him he was not pursuing the contract is a statement of fact which, if believed, would subject the plaintiff to an action for fraud.

also <u>Ellerin v. Fairfax Sav, F.S.B.</u>, 337 Md. 216, 232-5, 652 A.2d 1117, 1125 (1995) ("It is sufficient if the statement be made for a fraudulent purpose and without a *bona fide* belief in its truth by the defendant, with the intention of inducing the plaintiff to do an act.")(emphasis in original); Restatement (Second) of Torts § 526 (1977)("A misrepresentation is fraudulent if the Maker .. knows that he does not have the basis for his representation that he states or implies.").

A dispute of material fact exists regarding whether the defendant lacked a bona fide belief in the truth of his alleged representations.  Defendant stated that in the Spring of 2002, he was not aware that Wilson was intending to file a suit for specific performance.  However, when viewed in the light most favorable to the non-moving party, the evidence suggests that defendant was not sufficiently involved in the Buckhantz-Wilson dispute to have a bona fide belief regarding Mr. Wilson's intentions.  Defendant conceded that "during the Spring of 2002, he had little knowledge of the dispute between Wilson and Buckhantz." (Paper No. 35 at 17).  The basis of this knowledge did not come from his own experiences, from speaking to the parties involved, or even from specifically asking Freyvogel, the primary partner involved, about the matter.  Instead, defendant said he was only familiar with the case by "way of anecdote, if anything" from Freyvogel.  (Paper No. 41, Exh. 19 at 10-11).

15

Although the Court is not convinced that the evidence shows defendant lacked a bona fide belief, a reasonable jury could reasonably infer that defendant acted with reckless indifference, because defendant knowingly lacked a sufficient basis to know whether or not Wilson had reserved his rights under the contract.[9]

        3.   <u>A Reasonable Jury Could Find Defendant Intended to Deceive the Plaintiff.</u>

The plaintiff must present clear and convincing evidence that the defendant made the misrepresentation with deliberate intent to deceive. <u>Sass v. Andrew</u>, 152 Md. App. 406, 430, 832 A.2d 247, 260 (2003). An intent to deceive is defined under Maryland law as follows:

> An action cannot be supported for telling a bare naked lie, *i.e.,* saying a thing which is false, knowing or not knowing it to be so, and without any intention that another should rely upon the false statement and act upon it; but if a falsehood be knowingly told, with an intention that another should believe it to be true and act upon it, and that person does act upon it and thereby suffers damage, the party telling the falsehood is responsible in damages in an action for deceit.

<u>Ellerin v. Fairfax Sav, F.S.B.</u>, 337 Md. 216, 230, 652 A.2d 1117, 1124 (1995) (citing <u>McAller v. Horsey</u>, 35 Md. 439 (1872)). A

---

[9] Defendant argues that it is "moot" whether he was aware that he lacked knowledge or otherwise failed to investigate the matter, because any reasonable sources of information, including Mr. Fryvegold or the case file would not have put him on notice that Mr. Wilson might be pursuing the claim. (Paper No. 41-1 at 5). However, the standard is not whether or not the search would have produced information, but whether the information was provided recklessly. If the defendant had spoken to Freyvogel or had reviewed the case file and then concluded no further action was pending, clearly no reasonable jury could conclude that he acted in reckless disregard for the truth. However, those facts are not present here.

showing of malice or evil intent is not required.  <u>Ellerin</u>, 337
Md. at 235, 652 A.2d at 1127 (reckless indifference "falls short
of the mens rea which is required to support an award of punitive
damages").  Fraudulent intent may be inferred from the conduct of
the parties.  <u>Fuller v. Horvath</u>, 42 Md.App. 671, 685, 402 A.2d
134, 142 (1979) (<u>citing</u> <u>Sisk v. Garvey</u>, 27 Md 401 (1867)).

While no direct evidence has been offered of defendant's
intention to deceive plaintiff, that intention may be inferred
from his conduct.  Defendant purportedly told the plaintiff that
he was Mr. Buckhantz's attorney (Paper No. 38, Exh. A at 1)
without revealing that he had not worked on the Wilson matter or
spoken to Wilson, or even that he was only a second year
associate.  Instead, defendant is said to have told the plaintiff
that Mr. Wilson told him that he was not pursuing his rights
under the contract.  When viewed in the light most favorable to
the non-moving party, a reasonable jury could infer from the
defendant's actions that he intended to deceive the plaintiff.

4. <u>A Reasonable Jury Could Find That The Plaintiff
Justifiably Relied on the Defendant's Alleged
Assertions.</u>

A party must not only have in fact relied on the defendant's
representations, but the reliance must have been justifiable.
<u>Rozen v. Greenberg</u>,165 Md. App. 665, 886 A.2d 924, 931 (2005).
Negligence is the yardstick by which the Maryland courts measure
justifiable reliance.  <u>Moseman v. Van Leer</u>, 263 F.3d 129, 132

(4th Cir. 2001).  A party is justified in relying on another's
factual assertions unless, "under the circumstances, the facts
should be apparent to one of his knowledge and intelligence from
a cursory glance or he has discovered something which should
serve as a warning that he is being deceived, that he is required
to make an investigation of his own."  Id.; Gross v. Sussex,
Inc., 332 Md. 247, 269, 630 A.2d 1156, 1167 (1993).  In so
determining, the background and experience of the relying party
is relevant.  Goldstein v. Miles, 159 Md. App. 403, 454, 859 A.2d
313, 331 (2004).

     While plaintiff has been involved in multiple real estate
transactions, the defendant's alleged statements by themselves
would not have put an individual with the plaintiff's experience
on notice that additional investigation was necessary.  No
indication was given that defendant did not represent Buckhantz
in this Wilson matter, or that defendant had never spoken to
Wilson.  Defendant did not counsel plaintiff to conduct
additional investigation or seek his own attorney.  Instead,
plaintiff purportedly was told without qualification that Wilson
told defendant he was not planning to enforce the contract.
Defendant argues that as a matter of law it was unreasonable for
plaintiff, an experienced businessman who knew about the Wilson
contract, to rely on an attorney who represented the owner of the
property.  (Paper No. 36 at 17).  Defendant was unable to offer

any case law to support his argument.  Under Maryland law, an individual's profession, <u>i.e.</u>, a practicing attorney, or expertise, without more, does not automatically preclude him from relying on another's statements. <u>Gross v. Sussex, Inc.</u>, 332 Md. 247, 269, 630 A.2d 1156, 1167 (1993).  Similarly, statements made by an attorney do not preclude a third party non-client from relying on fraudulent statements.  <u>Noble v. Bruce</u>, 349 Md. 730, 738, 709 A.2d 1264 (1998)(citing <u>National Sav. Bank v. Ward</u>, 100 U.S. 195, 205-6 (1879)); <u>Flaherty v. Weinberg</u>, 303 Md. 116, 492 A.2d 618 (1985). <u>See also</u> <u>Parlette v. Parlette</u>, 88 Md. App. 628, 636, 596 A.2d 665 (1991).  Instead, as discussed <u>infra</u>, the question is an issue of fact which is normally left to the province of the jury.  <u>Gross v. Sussex, Inc.</u>, 332 Md. 247, 269, 630 A.2d 1156, 1167 (1993).  While the Court is sometimes skeptical that a reasonable person with plaintiff's business experience would rely on the assertions of the attorney representing the property owner without conducting additional investigation or consulting his own attorney, the Court is not prepared to conclude from the circumstances presented that no reasonable jury could find his reliance reasonable.

     5.  <u>Plaintiff's Partial Ownership Interest in the Wight Street Property Does not Bar Him From Recovering any Damages</u>.

Under Maryland law, the plaintiff must establish clear and convincing evidence of damages resulting from the defendant's

conduct.  Hoffman v. Stamper, 385 Md. 1, 41, 867 A.2d 276, 300 (2005).  A reasonable probability must exist that the act complained of caused the act suffered.  Lustine Chevrolet v. Cadeaux, 19 Md.App. 30, 36, 308 A.2d 747, 751 (1973).

Defendant argues that plaintiff has no damages, because he now shares an ownership interest of the Wight Street Property with Wilson.  (Paper No. 35 at 20).  This argument is unavailing.  As noted by plaintiff, defendant's argument only affects the amount of damages, not whether the plaintiff suffered any damages.  The plaintiff said that he would have bought a different house, to which he would enjoy full rights under the contract, if he had known of the misrepresentation.  Ownership of a partial interest in the Wight Street Property does not negate the plaintiff's damages claim.  While his partial interest in the subject property may well diminish his damages, that fact does not eliminate any damage.  A question of material fact therefore remains as to the amount of damages.  Plaintiff was under a duty to mitigate his damages after learning about Wilson's lawsuit for specific performance.  MPJI 10:6.  Yet, during the time in between the contract formation, March 31, 2002, and Wilson's lawsuit, filed May 1, 2002, no evidence has been presented to show the housing market either rapidly appreciated in value or that the houses plaintiff was interested in were no longer on the market.  However, the burden is on the defendant to show the loss

could have been avoided by the exercise of reasonable effort by the plaintiff.  Schlossberg v. Epstein, 73 Md.App. 415, 534 A.2d 1003 (1988).  In any event, it appears that proof of damages will be difficult and the amount of damages, if any, modest.

But, because genuine issue of material fact remain unresolved in the dispute, the defendant's motion for summary judgment is denied.

III. Motion for Leave to File Amended Complaint

Plaintiff seeks to add an additional cause of action for negligent misrepresentation based on the same facts previously alleged in the complaint.  (Paper No. 39-1).  Defendant objects to the amendment as prejudicial, futile, and made in bad faith and for tactical reasons.  (Paper No. 40-1 at 4-5).

Rule 15(a) of the Federal Rules of Civil Procedure provides that a motion to amend the pleadings should be granted freely when justice so requires.  "Disposition of a motion to amend is solely in the discretion of the district court."  Deasy v. Hill, 833 F.2d 38, 40 (4th Cir. 1987).  Delay in amending the complaint is sufficient reason to deny leave to amend only when accompanied by prejudice, bad faith, or futility.  Franks v. Ross, 313 F.3d 184, 193 (4th Cir. 2002); Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999).  Leave to amend should only be denied on grounds of futility when the proposed amendment is clearly insufficient or frivolous on its face.  Johnson v. Oroweat Foods,

21

785 F.2d 503, 510 (4th Cir. 1986).

Some courts have been reluctant to permit the amendment of complaints after the close of discovery, when the motion is filed in response to the defendant's motion for summary judgment. Burton v. Youth Services Intern, Inc., 176 F.R.D. 517, 521 (D. Md. 1997).

> Not only would [the reopening of discovery] cause the
> defendant prejudice, it would harm the public interest
> by undermining the orderly administration of justice.
> The era has passed in which courts simply ignored the
> damage caused by permitting endless motions to amend
> and the delay that such motions entail. It is now
> recognized that justice and the fair and efficient
> resolution of claims (by judicial decision or
> settlement among the parties) requires sound
> management. It is further recognized that sound
> management cannot tolerate, as a matter of routine, the
> addition of new claims after discovery has closed
> simply because a party's existing claims have been
> shown not to be legally viable.

Id.

Ample evidence exists of undue delay.  Plaintiff's complaint was filed almost fifteen months ago, in October 2004, and discovery is now complete.  Plaintiff has not provided the Court with any explanation for the delay in filing the amendment.[10]

In addition, plaintiff's motion is futile.  Unlike in cases of fraud, to establish negligent misrepresentation, plaintiff is

---

[10] Plaintiff argued at the motions hearing that the motion should be granted because Maryland law provides a very liberal standard.  The case is before the Court in federal courts, and it has long been established that the Court is bound by the federal rules of procedure, not state procedural laws. 19 Wright & Miller, Federal Practice and Procedure, § 4508 (2005).

required to establish "conduct which falls below the standard of
care of the maker of the statement owes to the person to whom it
is made." <u>Gross v. Sussex, Inc.</u>, 332 Md. 247, 260, 630 A.2d
1156, 1162 (1993).  Maryland law clearly states that an attorney,
acting in his professional capacity, only owes a duty of care to
his clients and to intended third-party beneficiaries.  <u>Flaherty
v. Weinberg</u>, 303 Md. 116, 127, 492 A.2d 618, 624 (1985); <u>Noble v.
Bruce</u>, 349 Md. 730, 738, 709 A.2d 1264 (1998) ("[T]he rule
protects the attorney's duty of loyalty to effective advocacy for
his or her client... An attorney's preoccupation or concern with
potential negligence claims by third parties might result in the
diminution in the quality of the legal services received by the
client as the attorney might weigh the client's interests against
the attorney's fear of liability to a third party.") Because
plaintiff was not a client of the defendant or his client's
intended beneficiary, defendant clearly does not owe a duty of
care to the plaintiff under Maryland law.  As a result,
plaintiff's new cause of action is futile.

At the motions' hearing, plaintiff cited to <u>Martens
Chevrolet, Inc. v. Seney</u>, 292 Md. 328, 338 n.7, 439 A.2d 534, 539
(1982), in arguing that an attorney also owes a duty of care to a
party to a contract who relies on misrepresentations of the
attorney, in his capacity as the agent to another party to the
contract.  <u>Martens</u> only addresses whether a party to a contract

owes a duty of care to another party to the contract, and does not support creating a new duty of care owed by an attorney. Without any additional support, plaintiff failed to show a reasonable basis by which a Court could overturn established Maryland law.  As a result, the proposed amendment is clearly insufficient on its face.

Even if the amendment was not futile, the delay in filing the amendment would be prejudicial to the defendant.  Discovery is now closed.  Yet, to adequately address the new element of duty of care, defendant would be required to hire an expert to address whether defendant owes plaintiff a standard of care and, if so, whether his actions violated that standard.  Thus, even though the new allegations arises from the same facts, defendant would be prejudiced by the amendment.

Moreover, this is the second time plaintiff has sought to re-configure his case in response to a dispositive motion filed by the defendant.  Previously, plaintiff sought leave to remedy its failure to list all of the required elements for a claim of fraud under Maryland law.  Now, after the close of discovery, plaintiff seeks to assert a new cause of action without explanation.

As a result, in the interest of justice, plaintiff's motion is denied.

IV.  <u>Conclusion</u>

For the foregoing reasons, defendant's motion for summary judgment is DENIED, and plaintiff's motion for leave to amend the pleading is DENIED.


Date:_____            _____/s/_____
                               Susan K. Gauvey
                               United States Magistrate Judge